IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

UNITED STATES OF AMERICA       :

   v.                          :   Criminal Case No. DKC 13-0650

SHANE ELLIOTT HARE, GREGORY    :
ANTOINE WILLIAMS, and ANTONIO
EDWARDS                        :

**MEMORANDUM OPINION AND ORDER**

    This case arises from a sting operation conducted by agents of the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF"), in cooperation with local law enforcement, in which an undercover agent contacted Marvin Bowden – who was believed to be involved in drug trafficking, armed robberies, and home invasions – and proposed the robbery of a purported drug stash.[1] After agreeing to commit the robbery, Bowden was introduced to another undercover agent, posing as a drug courier, who advised that he would be transporting a large quantity of cocaine to a local stash house in the near future. Bowden confirmed his interest in robbing the stash house, stating that he had committed similar crimes in the past with a crew of three or four individuals. Bowden and his robbery crew – allegedly

---

[1] These alleged facts are set forth in an affidavit filed in support of the criminal complaints. (ECF No. 1-1). Mr. Bowden is separately indicted.

consisting of Defendants Shane Elliott Hare, Gregory Antoine Williams, and Antonio Edwards – subsequently met with the undercover agent/drug courier on multiple occasions to make further plans and agreed to split the proceeds of the armed robbery. When Bowden and Defendants drove to a meeting location on the planned date of robbery, they were arrested by a team of ATF agents. A search of Bowden's vehicle incident to arrest recovered, *inter alia*, two firearms.

By a superseding indictment filed December 18, 2013, Defendants were charged with conspiracy to interfere with commerce by robbery, in violation of 18 U.S.C. § 1951(a); conspiracy to possess with intent to distribute cocaine, in violation of 21 U.S.C. § 846; conspiracy to possess a firearm in furtherance of a drug trafficking crime and a crime of violence, in violation of 18 U.S.C. § 924(o); and possession of a firearm in furtherance of a drug trafficking crime and a crime of violence, in violation of 18 U.S.C. § 924(c). (ECF No. 70).[2] Soon thereafter, Defendant Hare filed the pending "motion for discovery on the issue of racial profiling/selective prosecution," asserting entitlement to discovery related to the defenses of selective prosecution and/or selective enforcement under *United States v. Armstrong*, 517 U.S. 456 (1996), and

---

[2] Defendant Edwards was additionally charged with being a felon in possession of firearm, in violation of 18 U.S.C. § 922(g)(1).

Fed.R.Crim.P. 16. (ECF No. 74). The government filed a response in opposition (ECF No. 86), and Defendants Williams and Edwards later adopted Defendant Hare's motion (ECF Nos. 89, 90).

At a motions hearing on March 18, 2014, the court discussed *United States v. Alexander*, No. 11 CR 148-1, 2013 WL 6491476 (N.D.Ill. Dec. 10, 2013), an analogous case decided by the United States District Court for the Northern District of Illinois. Like the instant case, *Alexander*, 2013 WL 6491476, at *1, addressed a motion for discovery "regarding alleged racial profiling in the investigation and prosecution of the ATF's stash-house robbery sting operations," citing as support the fact that, in a number of similar prosecutions in that district, the defendants overwhelmingly had been African American. As the *Alexander* court explained, "'justifications for a rigorous standard for the elements of a selective-prosecution claim . . . require a correspondingly rigorous standard for discovery in aid of such a claim.'" *Id*. at *3 (quoting *Armstrong*, 517 U.S. at 468). Thus, "to obtain discovery on a selective prosecution claim, a criminal defendant must show 'some evidence of both discriminatory effect and discriminatory intent.'" *Id*. (quoting *United States v. Bass*, 536 U.S. 862, 863 (2002)); *see also United States v. Barlow*, 310 F.3d 1007, 1010 (7th Cir. 2002) (finding "the same analysis governs" selective prosecution and selective enforcement claims). The court in *Alexander* found

that the defendant had failed to make the requisite showing as to either prong, but was "sympathetic to [his] argument that '[i]t is difficult to identify similarly situated whites who have not been targeted absent information about what selection criteria the informants and [the] ATF have been using.'" *Id*. at *5. Accordingly, the court reviewed an ATF field manual submitted *ex parte* by the government and "identified certain sections that the government should disclose to defense counsel, subject to the protective order in th[e] case." *Id*.

In the instant case, the court observed that Defendants were not the targets of the ATF's initial investigation – indeed, insofar as they were "selected" for prosecution, the selection was allegedly made by Mr. Bowden, not the government – and that, by itself, the fact that the defendants in four other prosecutions in this district were of the same race was not particularly compelling. Further noting that Defendants had not identified the person or persons alleged to have made the discriminatory decisions, that there was no evidence that similarly situated non-African American individuals were not prosecuted or investigated, and that there was no indication of bad faith in prosecution or enforcement, the court found that Defendants had failed to make the showing of discriminatory effect and discriminatory intent required under *Armstrong* and

4

the motion was denied.[3] Nevertheless, based on the reasoning set forth in *Alexander*, the government was directed to investigate the existence of an ATF field manual or "playbook" related to these investigations and to provide such documents to the court for *in camera* review.

On March 25, the government produced an ATF operations manual, asserting that it was created in July 2013 – *i.e.*, after the events at issue in this case – but that ATF agents in this district received training regarding this type of investigation prior to the relevant events. Upon the court's direction, the government conducted further investigation to locate any training documents, and such documents were provided for *in camera* inspection on April 1, 2014.

Having reviewed the training materials, the court finds that the government must produce to Defendants one page of the training documents – specifically, page five, §§ IV.A.1 and IV.A.2, setting forth procedures and guidelines for selecting a target. While this page is not in any way suggestive of discriminatory animus, disclosure is warranted insofar as Defendants would otherwise have no way of learning the

---

[3] The court further determined that discovery was not available under Rule 16. *See Armstrong*, 517 U.S. at 463 ("Rule 16(a)(1)(C) [now Rule 16(a)(1)(E)] authorizes defendants to examine Government documents material to the preparation of their defense against the Government's case in chief, but not to the preparation of selective-prosecution claims.").

government's criteria for selecting targeted individuals. If the government wants this disclosure to be subject to a protective order, it may consult with Defendants' counsel and/or file an appropriate motion.

ACCORDINGLY, it is this 17th day of April, 2014, by the United States District Court for the District of Maryland, ORDERED that:

1. The government will produce to Defendants page five, §§ IV.A.1 and IV.A.2, of the training materials that it provided to the court for *in camera* review; and

2. The clerk is directed transmit copies of this Memorandum Opinion and Order to counsel for the parties.

_____/s/_____
DEBORAH K. CHASANOW
United States District Judge